| | |
|---|---|
| CAHUENGA ASSOCIATES II, a California Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>S/V MAKO, U.S.C.G. OFFICIAL NO. 1193413, A FARR 40 SAILING VESSEL OF APPROXIMATELY 40.5-FEET IN LENGTH AND 13-FEET IN BEAM, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, in rem,<br><br>Defendant. | Case No.: 17-cv-0994-GPC (BGS)<br><br>IN ADMIRALTY<br><br>(1) ORDER AUTHORIZING ARREST OF DEFENDANT VESSEL PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE C<br><br>(2) ORDER APPOINTING SUBSTITUTE CUSTODIAN AND AUTHORIZING MOVEMENT OF DEFENDANT VESSEL<br><br>F.R.C.P. Supplemental Admiralty Rules C and E.<br><br>46 U.S.C. Sections 30101-31343 |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Before the Court is Plaintiff Cahuenga Associates II's (1) Ex Parte Application for Issuance of Warrant for Arrest of Defendant Vessel and (2) Ex Parte Application to Substitute Custodian and for Authorization of Movement of Defendant Vessel by Cahuenga Associates II. Based upon a review of the moving papers and the applicable law, the Court hereby **GRANTS** Plaintiff's ex parte applications.

/ / / /

1

17-cv-0994-GPC (BGS)

## BACKGROUND

On May 12, 2016, Plaintiff filed a Verified Complaint, in Admiralty, For Vessel Arrest, Interlocutory Sale and for Money Damages for Breach of Maritime Contract and Quantum Meruit. Dkt. No. 1. Plaintiff argues that the owners of the Defendant vessel S/V Mako No. 1193413 ("Vessel No. 1193413") have breached a maritime contract for necessaries in the amount of $18,696.65. *Id.* ¶ 9. On June 2, 2015 Wayne Womack executed a Moorage Agreement with Plaintiff's marina, known as the "Kona Kai Marina," for the berthing of the Defendant vessel. *Id.* ¶ 5; Exhibit A. Thereafter, Plaintiff provided wharfage services for the Defendant vessel at its marina. *Id.* ¶ 6.

Womack tendered a deposit of $1,835 at the time of execution and thereafter made two payments, on July 21, 2015 and August 3, 2015, for $866.00 each. *Id.* ¶ 7. Plaintiff has received no payments from Womack or any other individual since September 2015 despite having sent monthly invoices. *Id.* Plaintiff states the account for the Mako is currently $18,696.65 in arrears.

## JURISDICTION

Federal district courts have original jurisdiction over "[a]ny civil action of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. If a plaintiff demonstrates that it provided necessaries to a vessel by order of the owner of the vessel or a person authorized by the owner, "it may invoke the admiralty jurisdiction of the federal courts to enforce a necessaries lien in rem." *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 919 (9th Cir. 2002). A maritime contract is not needed to invoke the admiralty jurisdiction pursuant to the Maritime Lien Act. *Id.* at 919-922.

## I. ARREST WARRANT

**A. Maritime Lien Act**

The Federal Maritime Lien Act states that

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner – (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (2) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342. A lien claimant must meet three requirements before a court may grant a maritime lien under 46 U.S.C. § 31342: namely, (1) that the individual provided necessaries; (2) to a vessel; (3) on the order of the owner or a person authorized by the owner. *Ventura Packers*, 305 F.3d at 923; *see also Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.*, 808 F.2d 697, 699 (9th Cir. 1987) (citing 46 U.S.C. § 971[1]).

Section 31301(4) defines necessaries as "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). This list, however, is not exhaustive as the term is broadly construed to refer to "anything that facilitates or enables a vessel to perform its mission or occupation." *Ventura Packers*, 305 F.3d at 923 (citing, in part, *Farwest Steel Corp. v. Barge Sea-Span 241*, 769 F.2d 620, 623 (9th Cir. 1985)). Wharfage services are "necessaries" within the meaning of maritime law. *See The Western Wave*, 77 F.2d 695, 698 (5th Cir. 1935) (wharfage fees constituted necessaries); *Humphreys Railways, Inc. v. F/V Nils S*, 603 F. Supp. 95, 98 (E.D. Va. 1984) (same); *Crescent City Harbor Dist. v. M/V Intrepid*, 2008 WL 5211023, *3 (N.D. Cal. Dec. 11, 2008) (same); *see also California Yacht Marina–Chula Vista, LLC v. S/V OPILY*, 2015 WL 1197540, *1 (S.D. Cal. Mar. 16, 2015) (Bashant, J.) (stating in background that failure to pay wharfage fee resulted in maritime "necessaries" lien).

A vessel need not be engaged in commerce to be subject to admiralty law. *Goodman v. 1973 Foot Trojan Vessel, Arkansas Registration No. AT1439SN*, 859 F.2d 71, 73 (8th Cir. 1988). The term "vessel," in fact, includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." *Id.* (citing 3 U.S.C. § 3).

---

[1] Sections 971, 972 and 973 of the Federal Maritime Lien Act were repealed and replaced by Sections 31341 and 31342 effective January 1, 1989. *Port of Portland v. M/V Paralla*, 892 F.2d 825, 827 n.1 (9th Cir. 1989). "Although Congress altered the text of the statute, it intended no substantive change." *Ventura Packers*, 305 F.3d at 917 n.2.

3

**B**. **Admiralty Rule C**

Under Fed. R. Civ. P. Supp. Admiralty Rule C (concerning In Rem Actions) an action in rem may be brought to enforce a maritime lien only when the complaint is (1) verified; (2) describes the property that is the subject of the action with "reasonable particularity"; and (3) states that the property is within the district or will be within the district while the action is pending. If a Court determines, after reviewing the complaint and supporting papers, that the conditions for an in rem action exist, "the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." Fed. R. Civ. P. Supp. Admiralty Rule C. According to the Advisory Committee's Note for Rule C, "the rule envisions that the (arrest) order will issue upon a prima facie showing that the plaintiff has an action in rem against the defendant in the amount sued for and that the property is within the district. A simple order with conclusory findings is contemplated."

**C. Analysis**

The Court finds that it is proper to institute an in rem action, in admiralty law, to enforce Plaintiff's maritime lien against Vessel No. 1193413. The requirements of 46 U.S.C. § 31342 have been met. Plaintiff's complaint includes a copy of the contract at issue. Dkt. No. 1-2. The contract is entitled "Moorage Agreement" and provides for the permanent tenancy of Vessel No. 1193413 at the Kona Kai Marina in San Diego. *Id.* The contract, therefore, is one for necessaries as it provides for wharfage services. The Agreement further states that Wayne Womack is the "owner" of the vessel, which is a 40-foot sail boat with a beam of 13.2 ft.[2] The latter two § 31342 requirements, therefore, have also been met.

---

[2] The Agreement states that the name of the vessel is "cactus," which differs from the name given by Plaintiff. The Court notes, however, that the vessel number listed in the Moorage Agreement is the same as the number provided by Plaintiff in the complaint.

Plaintiff has also satisfied the requirements of Admiralty Rule C. The complaint states that the Defendant vessel is a 2003 Farr 40 sailboat of approximately 40.5-feet in length, and 13-feet in beam, with a United States Coast Guard number 1193413. Dkt. No. 1 at 2. The vessel is currently residing at the Kona Kai Marina, located at 1561 Shelter Island Drive, San Diego, CA 92106. *Id.* Plaintiff's counsel has, moreover, submitted a Declaration, Dkt. No. 2-1, declaring under penalty of perjury that the facts laid out in the complaint are true and correct. *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (to verify a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties" of perjury). Accordingly, the Court is satisfied that Plaintiff has made a prima facie case demonstrating that an in rem action over Vessel No. 1193413 is proper and that the action is properly within the subject matter jurisdiction of this Court.

## **ARREST WARRANT ORDER**

The Court, having reviewed the Verified Complaint of the Plaintiff and the Declaration of Philip E. Weiss, an attorney acting on its behalf, and upon application of Plaintiff for an Order Authorizing a Warrant of Arrest for the Defendant Vessel, finds that the conditions for an action *in rem* appear to exist, and it is therefore

**ORDERED** that the immediate issuance of a Warrant for the arrest of the Defendant Vessel S/V MAKO, U.S.C.G. Official No. 1193413, a Farr 40 sailing vessel of approximately 40.5-feet in length and 13-feet in beam, and all of her engines, tackle, accessories, equipment, furnishings (the "DEFENDANT VESSEL") and appurtenances is authorized, and it is further

**ORDERED** that the Clerk of the District Court shall immediately prepare a Warrant for the Arrest of the DEFENDANT VESSEL and shall deliver it to the United States Marshal for the Southern District of California for service; and it is further

**ORDERED** that any person claiming an interest in the Defendant Vessel shall be entitled upon request to a prompt hearing, at which the Plaintiff shall be required

to show why the arrest should not be vacated or other relief granted consistent with the Supplemental Rules for Certain Admiralty and Maritime Claims, and it is further

**ORDERED** that CAHUENGA ASSOCIATES II must comply with the notice provisions as outlined in Fed. R. Civ. P. Supp. Admiralty Rule C(4) and Local Civ. R. C.1(b).

**ORDERED** that a copy of this Order be attached to and served with the said Warrant For Arrest In Action In Rem.

## II. <u>SUBSTITUTION OF CUSTODIAN</u>

Plaintiff has also moved the Court to appoint the owner and operator of the Kona Kai Marina as substitute custodian for Defendant Vessel No. 1193413. Dkt. No. 3 at 1.

Local Civil Rule E.1(2) (Actions in Rem and Quasi in Rem) provides that:

> On motion of any party, made after notice to the marshal and all parties who have appeared, a judge may order that custody of the vessel be given to the operator of a marina or similar facility, repair yard, or company regularly carrying on the business of ship's agent, if a judge finds that such firm or person can and will safely keep the vessel and has in effect adequate insurance to cover liability for failure to do so.

The rule also contemplates the movement of the arrested vessel:

> If the vessel must be moved to the place where custody will be maintained, a judge may also require insurance or other security to protect those having an interest in the vessel, as well as those claiming against her, from loss of damage to the res, liability of the vessel, incurred during movement. The order allowing such custody must fix fees to be charged therefor and for any other services to be rendered the vessel and must provide for their payment to the marshal in advance.

The Court is satisfied that the Kona Kai Marina is able to safely harbor and move the Defendant Vessel. The manager at the Kona Kai Marina, Adam Veves, submitted a declaration stating that the staff at the facility have the experience needed to preserve and protect the vessel. Dkt. No. 3-1 at 2. For instance, Veves explains that he is currently responsible for the daily operations at the Kona Kai Marina, a 520 slip marina, and that

6

17-cv-0994-GPC (BGS)

he is trained in vessel dewatering and pollution control operations. Veves further declares that the Cahuenga Associates II has several insurance policies protecting it against custodial negligence, including (1) a $1,000,000 ocean marine insurance policy, (2) a $3,000,000 commercial general liability policy, and (3) a $25,000,000 umbrella policy. *Id.*

Plaintiff further declares that it will provide ongoing custodial services at the slip where the Defendant Vessel is located at the marina's rate of $3.50 per foot of vessel length per day ($140.00 per day). *Id.* That rate shall include "Wharfage services, maintenance of the insurance specified [ ], and general custodial services . . . ." *Id.* Plaintiff will also conduct weekly inspections at $50.00 for "watertight integrity, excessive bilge water and fuel lubricant leaks" and a one-time inventory of the Vessel's interior, exterior, and equipment at a cost of $200.00. *Id.* at 2-3.

## **SUBSTITUTION OF CUSTODIAN ORDER**

Plaintiff, by and through its attorneys, Brodsky, Micklow, Bull & Weiss, having appeared and made the following recitals:

1. PLAINTIFF filed its Verified Complaint herein praying the DEFENDANT VESSEL be condemned and sold to pay their demands and for other proper relief.

2. PLAINTIFF accordingly anticipates that an Order will issue following its Application for Order Requiring Issuance of Warrant for Vessel Arrest, requiring that the Clerk of this Court issue a Warrant for Arrest of the DEFENDANT VESSEL, and commanding that the United States Marshal for this District arrest and take into custody the DEFENDANT VESSEL and detain her in custody until further Order of this Court respecting same.

3. It is therefore contemplated that the United States Marshal will arrest the DEFENDANT VESSEL forthwith. Custody by the United States Marshal requires the services of one or more keepers, and does not include charges for wharfage and the other services usually associated with safekeeping vessels similar to the DEFENDANT VESSEL.

4. CAHUENGA ASSOCIATES II, the Plaintiff herein, owns and operates the Kona Kai Marina, located at 1561 Shelter Island Drive, San Diego, California. It has agreed to assume the responsibility for safekeeping of the said DEFENDANT VESSEL, and to act as her Substitute Custodian until further Order of this Court. It will provide, as necessary under the circumstances, the following services for the safekeeping and preservation of the DEFENDANT VESSEL, at a cost not to exceed those prevailing rates of the Port of San Diego, as described below with further particularity in the Declaration of Adam Veves:

    a. As soon as possible after assuming custody of the DEFENDANT VESSEL, at a cost of $200.00, photograph and/or video tape her interior and exterior, and prepare a written inventory of key equipment and property on the vessel which is not installed as part of the vessel;

    b. Provide ongoing custodial services at the slip where the DEFENDANT VESSEL lies or another slip within the Substitute Custodian's marina, at the marina's rate of $3.50 per foot of vessel length per day (i.e., 40 ft. x $3.50 = $140.00 per day), which rate shall include wharfage services, maintenance of the insurance specified below, and general custodial services, including periodic inspection of mooring lines/fenders to assure safe and secure mooring, daily visual inspection of the exterior of the vessel for evidence of water intrusion, tampering or any other problems, and "walk by" inspections by marina personnel.

    c. Periodically and as deemed prudent under the existing circumstances, but no less than weekly, at the rate of $50.00 per inspection, inspect the interior of the DEFENDANT VESSEL for watertight integrity, excessive bilge water and fuel lubricant leaks. If it is determined that further action is necessary beyond those detailed herein the Substitute Custodian shall notify its counsel, so counsel can seek an appropriate Order from the Court.

    d. Provide at rates not exceeding the usual and customary rates prevailing in the Port of San Diego additional services, including cleaning, minor maintenance,

inspection of bottom by a diver for the purpose of cleaning and reporting findings regarding underwater hull, metal and zinc conditions, as such services are deemed reasonably prudent and necessary to preserve and protect the DEFENDANT VESSEL.

    e.    Engines and other machinery will be operated only as directed in a Court Order.

    f.    Provide other such services as might be required from time-to-time, by further Order of the Court.

    5.    The Substitute Custodian's responsibility shall not extend to inherent or latent defects or deficiencies in the hull, machinery or equipment, nor to any fines, penalties or costs related to the above.

    6.    The Substitute Custodian will not sell the DEFENDANT VESSEL or release her to anyone and/or let anyone aboard her, other than in the case of emergency or as otherwise directed by the Court.

    7.    PLAINTIFF, by the Declaration of Adam Veves has averred that PLAINTIFF has adequate facilities and supervision at Kona Kai Marina for the proper safekeeping of the DEFENDANT VESSEL, and that it maintains insurance policies which protect it against occurrences of negligence during its custodianship. Those policies include: (a) a $1,000,000 ocean marine insurance policy, underwritten by Zurich America Insurance Company; (b) a $3,000,000 (per occurrence and aggregate total) commercial general liability policy, underwritten by Greenwich Insurance Company and Lexington Insurance Company; and (c) a $25,000,000 (per occurrence and aggregate) umbrella policy, underwritten by Greenwich Insurance Company and Lexington Insurance Company. In addition to the above policies, the United States Marshal will secure, as usual, insurance to protect it against damages resulting from a marine casualty. Further, in said Declaration the Substitute Custodian accepts, in accordance with the terms of this Order Appointing Substitute Custodian and Authorizing Movement of the Vessel, possession of the DEFENDANT VESSEL, her engines, boilers, tackle,

apparel, furnishings, appurtenances, *etc*., and all other necessaries thereunto appertaining and belonging, which is the subject of the action herein.

8. PLAINTIFF, in consideration of the U.S. Marshal's consent to the Substitution of Custodian, have agreed to release the United States and the Marshal from any and all liability and responsibility arising out of the care and custody of the DEFENDANT VESSEL, her engines, boilers, tackle, apparel, furnishings, appurtenances, *etc*., and all other necessaries thereunto appertaining and belonging, from the time the Marshal transfers possession of the DEFENDANT VESSEL over to said Substitute Custodian, and said PLAINTIFF further agree to hold harmless and indemnify the United States and the Marshal from any and all claims whatsoever arising out of the Substitute Custodian's possession and safekeeping.

CAHUENGA ASSOCIATES II moved for the appointment of a substitute custodian. The Court may "order that custody of the vessel be given to the operator of a marina" if the Court finds they can "safely keep the vessel and has in effect adequate insurance." Local Civ. Rule E.1. The Court finds that CAHUENGA ASSOCIATES II satisfies the local rule and **GRANTS** the motion to appoint CAHUENGA ASSOCIATES II as substitute custodian authorized to move the DEFENDANT VESSEL. Dkt. No. 2.

**THEREFORE, IT IS HEREBY ORDERED** that the United States Marshal for the Southern District be, and is hereby, authorized and directed upon seizure of the DEFENDANT VESSEL, her engines, boilers, tackle, apparel, furnishings, appurtenances, *etc*., and all other necessaries thereunto appertaining and belonging, pursuant to Warrant for Arrest to be issued by the Clerk of this Court pursuant to Order of the Court, to surrender the possession thereof to the Substitute Custodian named herein, and that upon such surrender the U.S. Marshal shall be discharged from its duties and responsibilities for the safekeeping of the DEFENDANT VESSEL and held harmless from and against any and all claims whatever arising out of said substituted possession and safekeeping.

| | |
|---|---|
| 1 | **IT IS FURTHER ORDERED** that CAHUENGA ASSOCIATES II be and is |
| 2 | hereby appointed the Substitute Custodian of said DEFENDANT VESSEL, to retain the |
| 3 | same in its custody at the Kona Kai Marina in her current slip or another one at the |
| 4 | marina, for possession and safekeeping for the aforementioned compensation and in |
| 5 | accordance with the Declaration of Adam Veves and the recitals herein contained until |
| 6 | further Order of this Court. |
| 7 | **IT IS FURTHER OREDERD** that CAHUENGA ASSOCIATES II shall provide |
| 8 | the following services for the safekeeping of the DEFENDANT VESSEL at a cost not to |
| 9 | exceed the prevailing rates of the port: |

(1) As soon as possible after assuming custody of the DEFENDANT VESSEL, CAHUENGA ASSOCIATES II must photograph or videotape her interior and exterior.

(2) Provide vessel monitoring services. Periodically inspect mooring lines and fenders to assure safe mooring. Periodically inspect the vessel for watertight integrity, excessive bilge water, and fuel lubricant leaks.

(3) Provide wharfage services and electricity if needed.

**IT IS FURTHER ORDERED** that CAHUENGA ASSOCIATES II must not sell the DEFENDANT VESSEL. CAHUENGA ASSOCIATES II must not release the vessel or allow anyone aboard except in an emergency.

**IT IS FURTHER ORDERED** that if CAHUENGA ASSOCIATES II thinks further action is necessary for safekeeping beyond the instructions in this Order, CAHUENGA ASSOCIATES II shall seek an appropriate order from the Court.

**IT IS FURTHER ORDERED** that PLAINTIFF's attorney will serve a copy of this Order on the DEFENDANT VESSEL's owner or apparent owner, and on all known maritime lien claimants and/or others with a known or suspected interest in the DEFENDANT VESSEL.

////
////

Dated: June 21, 2017

_____
Hon. Gonzalo P. Curiel
United States District Judge